UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RAYMOND T. BALVAGE, et al.,

                    Plaintiffs,

v.

RYDERWOOD IMPROVEMENT AND
SERVICE ASSOCIATION, INC.,

                    Defendant.

CASE NO. C09-5409BHS

ORDER ON PARTIES' MOTIONS
FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiffs' second motion for partial summary judgment (Dkt. 128) and Defendant Ryderwood Improvement and Service Association, Inc.'s ("RISA") motion for summary judgment regarding 2007 survey (Dkt. 133). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies the motions for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

For a more complete factual background, see the Court's order issued June 4, 2010 (Dkt. 42 at 2-5) and the Ninth Circuit Court of Appeals opinion issued April 27, 2011 (Dkt. 108).

On July 8, 2009, Plaintiffs Raymond and Deborah Balvage and Charles and Susan Weaver, individually and on behalf of their marital communities and on behalf of a class of similarly situated individuals (collectively, "Plaintiffs"), filed a complaint against RISA.  Dkt. 1.  On November 10, 2009, Plaintiffs filed an amended complaint.  Dkt. 11.  On June 2, 2010, Plaintiffs filed their second amended complaint.  Dkt. 41.  In their second amended complaint, Plaintiffs allege that RISA violated the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3604(c), et seq., by engaging in illegal housing discrimination on the basis of familial status, and seek declaratory and injunctive relief.  *Id*. at 12-16.

On June 4, 2010, the Court granted in part Plaintiffs' motion for partial summary judgment concluding that, based on the HUD Memo, RISA could not "claim the HOPA exemption because it continued to discriminate while attempting to comply with the verification requirements."  Dkt. 42 at 12-13.  On August 11, 2010, the Court granted Plaintiffs' motion to issue a preliminary injunction ordering RISA to, among other things, remove all age restrictions from its bylaws, remove all signage that stated its 55 and older restrictive covenants and inform residents and local real estate agents that the Court had ordered RISA to immediately cease enforcement of its age restrictions.  Dkt. 75.  On September 1, 2010, the Court granted RISA's motion for a discretionary appeal under 28 U.S.C. § 1292(b), concluding that the questions presented were controlling issues of law and that there were substantial grounds for differences of opinion.  Dkt. 92.  The Court stayed the action, with the exception of RISA's pending motion for partial summary judgment, and certified the action to the Ninth Circuit Court of Appeals.  *Id*.  On

1    September 21, 2010, the Court granted RISA's motion for partial summary judgment

2    concluding that RISA's bylaws are enforceable as covenants.  Dkt. 100.

3           On April 27, 2011, the Ninth Circuit issued its opinion on RISA's appeal reversing

4    the Court's interpretation of the HUD Memo, holding that:

5           a residential community that has continuously operated as a retirement
            community for persons age 55 or older can qualify for the housing for older
6           persons exemption from the Fair Housing Act's prohibition on familial
            status discrimination by establishing that it currently satisfies the
7           exemption's three statutory and regulatory criteria at the time of the alleged
            violation, even if the community enforced age restrictions when it first
8           achieved compliance with the exemption's age verification requirement.

9    *Balvage v. Ryderwood Improvement and Service Ass'n, Inc.*, 642 F.3d 765, 768-69 (9th

10   Cir. 2011).  Further, the Ninth Circuit held that

11          [t]he [district] court properly concluded that RISA did not qualify for the
            HOPA exemption between May 2000 and September 2007, when RISA
12          completed its first HOPA verification survey, because during that time
            RISA did not verify by reliable surveys and affidavits—or through other
13          adequate means—that at least 80 percent of its occupied units were
            occupied by at least one person who was 55 years of age or older.
14
     *Id.* at 776 (citing 42 U.S.C. § 3607(b)(2)(C)(iii)).  Accordingly, the Ninth Circuit
15
     remanded the action to this Court to address the parties' dispute as to "whether RISA's
16
     September 2007 survey satisfies the statutory and regulatory criteria." *Id.* at 780.
17
18          On April 12, 2012, Plaintiffs filed their second motion for partial summary

19   judgment.  Dkt. 128.  On April 30, 2012, RISA responded (Dkt. 136) and on May 4,

20   2012, Plaintiffs replied (Dkt. 142).  Also on April 12, 2012, RISA filed its motion for

21   summary judgment regarding the 2007 survey.  Dkt. 133.  On April 30, 2012, Plaintiffs

22   responded to RISA's motion (Dkt. 139) and on May 4, 2012, RISA replied (Dkt. 143).

## II. DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically

1  attested by that party contradict facts specifically attested by the moving party.  The

2  nonmoving party may not merely state that it will discredit the moving party's evidence

3  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

4  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

5  nonspecific statements in affidavits are not sufficient, and missing facts will not be

6  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

7  **B.      The Parties' Motions for Summary Judgment Regarding the 2007 Survey**

8         The main issue remaining following the Ninth Circuit's remand of this matter is

9  whether RISA conducted a proper survey in 2007 sufficient to meet the verification

10  requirements of 42 U.S.C. § 3607(b)(2)(C)(iii) and 24 C.F.R. § 100.307.  *See Balvage*,

11  642 F.3d at 780.  Plaintiffs' motion for partial summary judgment asks the Court to

12  conclude, as a matter of law, that RISA's 2007 survey was inadequate under the

13  applicable statute and regulations.[1]  Dkt. 128.  RISA's motion for summary judgment

14  asks the Court to conclude, as a matter of law, that RISA's 2007 survey was adequate

15  under the statute and therefore, RISA is in compliance with HOPA and this action should

16  be dismissed.  Dkt. 133.

17         **1.      Statutory and Regulatory Requirements**

18         RISA bears the burden of establishing its compliance with each of the three

19  statutory and regulatory requirements.  *Balvage*, 642 F.3d at 777 (referencing 42 U.S.C. §

20

21  ────────────────

22         [1] Plaintiffs also argue in their motion that RISA's bylaws are void and therefore
unenforceable, which will be addressed by the Court in a separate section of this order.

1  3607(b) and 24 C.F.R. § 100.304 – 100.307).  The statute requires that RISA show the

2  following elements have been met:

3          (i) at least 80 percent of the occupied units are occupied by at least
        one person who is 55 years of age or older;

4          (ii) the housing facility or community publishes and adheres to
        policies and procedures that demonstrate the intent required under this

5      subparagraph;

6          (iii) the housing facility or community complies with rules issued by
        the Secretary for verification of occupancy, which shall—

7              (I) provide for verification by reliable surveys and affidavits;
        and

8              (II) include examples of the types of policies and procedures
        relevant to a determination of compliance with the requirement of clause
        (ii).

9

10  42 U.S.C. § 3607(b)(2)(C).  Section 100.307 of the companion regulation lists the

11  requirements for verification of occupancy:

12          (a) In order for a housing facility or community to qualify as housing
        for persons 55 years of age or older, it must be able to produce, in response
        to a complaint filed under this title, verification of compliance with

13      § 100.305 through reliable surveys and affidavits.

14          (b) A facility or community shall, within 180 days of the effective
        date of this rule, develop procedures for routinely determining the
        occupancy of each unit, including the identification of whether at least one

15      occupant of each unit is 55 years of age or older.  Such procedures may be
        part of a normal leasing or purchasing arrangement.

16          (c) The procedures described in paragraph (b) of this section must
        provide for regular updates, through surveys or other means, of the initial

17      information supplied by the occupants of the housing facility or
        community.  Such updates must take place at least once every two years.  A

18      survey may include information regarding whether any units are occupied
        by persons described in paragraphs (e)(1), (e)(3), and (e)(4) of § 100.305.

19          (d) Any of the following documents are considered reliable
        documentation of the age of the occupants of the housing facility or

20      community: (a) Driver's license; (2) Birth certificate; (3) Passport; (4)
        Immigration card; (5) Military identification; (6) Any other state, local,

21      national, or international official documents containing a birth date of
        comparable reliability; or (7) A certification in a lease, application,

22      affidavit, ro other document signed by any member of the household age 18

ORDER - 6

or older asserting that at least one person in the unit is 55 years of age or older.

(e) A facility or community shall consider any one of the forms of verification identified above as adequate for verification procedures required by this section.

(f) The housing facility or community must establish and maintain appropriate policies to require that occupants comply with the age verifications procedures required by this section.

(g) If the occupants of a particular dwelling unit refuse to comply with the age verification procedures, the housing facility or community may, if it has sufficient evidence, consider the unit to be occupied by at least one person 55 years of age or older. Such evidence may include:

(1) Government records or documents, such as a local household census;

(2) Prior forms or applications; or

(3) A statement from an individual who has personal knowledge of the age of the occupants. The individual's statement must set forth the basis for such knowledge and be signed under the penalty of perjury.

(h) Surveys and verification procedures which comply with the requirements of this section shall be admissible in administrative and judicial proceedings for the purpose of verifying occupancy.

(i) A summary of occupancy surveys shall be available for inspection upon reasonable notice and request by any person.

24 C.F.R. § 100.307(a)-(i).

## 2.    Evidentiary Issues

Whether there is a material question of fact that precludes summary judgment in favor of either party on the issue of the 2007 Survey centers on the Court's treatment of the declarations submitted by the parties in support of their motions for summary judgment.

RISA, in support of its motion for summary judgment and opposition to Plaintiffs' motion, relies on the declarations of Sally-Gene DeBriae ("DeBriae") (Dkt. 24) and Frances Sanders ("Sanders") (Dkt. 138) to support its argument that the 2007 Survey was

1    administered in a way that satisfies the regulations and more specifically, that occupants,

2    not owners, were in fact surveyed.  Plaintiffs maintain that DeBriae does not have

3    personal knowledge of how the 2007 Survey was administered and therefore her

4    declaration should be stricken.  Dkt. 139 at 8.  In addition, Plaintiffs argue that Sanders's

5    recent declaration stating that RISA's list of property owners was extensively fact-

6    checked in September 2007 is contradicted by her prior deposition when she testified that

7    it was not her job to verify the accuracy of the information and that she simply compared

8    a list she was given against documents RISA had on file.  Dkt. 142 at 5-7, 11 (citing

9    Dkts. 129-1 and 138).  Accordingly, Plaintiffs contend that Sanders's most recent

10   declaration (Dkt. 138) is contradicted by her prior testimony and is therefore a sham and

11   should be disregarded by the Court.  Dkt. 142 at 6-7.

12        Plaintiffs, in support of their motion for partial summary judgment, submitted the

13   declarations of Joyce Adams ("Adams") (Dkt. 130), Joyce Fischer ("Fischer") (Dkt. 131),

14   and Claudia Drake ("Drake") (Dkt. 132), to support their argument that the 2007 Survey

15   was administered in a way that does not satisfy the statutory and regulatory requirements.

16   Dkt. 128.  RISA maintains that Adams's and Fischer's declarations contradict their

17   previous deposition testimony and that Drake's declaration contradicts a sworn affidavit

18   she executed in 2007, as well as two additional documents.  Dkt. 136 at 3-8.

19        Based on the arguments made by the parties, the Court must decide whether any of

20   the evidence described above is not supported by personal knowledge of the facts

21   testified to or contradicted by previous testimony to the extent that such evidence should

22   be considered inadmissible for purposes of summary judgment.

1    The Court makes the following evidentiary rulings with respect to the various

2  declarations submitted by the parties.[2]

3                    **a.    Answers to Plaintiffs' Third Set of Interrogatories**

4          Plaintiffs argue that the portions of RISA's motion for summary judgment that

5  rely on RISA's answers to Plaintiffs' third set of interrogatories (Dkt. 135-6), which were

6  verified by DeBriae, should be stricken because DeBriae lacked any personal knowledge

7  of the 2007 Survey.  Dkt. 139 at 8-9.  Specifically, Plaintiffs ask the Court to strike the

8  following pages and lines of RISA's motion: 8:13-15, 9:3-4, 11:2-3, 14:2-8, and 16:2-5.

9          First, the Court concludes that the lines on pages 14 and 16 need not be stricken

10  because they are supported by the declaration of Sanders (*see* Dkt. 133 at 14:2-8 & 16:2-

11  5 (citing Dkt. 138)).  However, the Court concludes that Plaintiffs are entitled to have the

12  requested lines on pages 8, 9, and 11 stricken because RISA has failed to show that

13  DeBriae possessed any personal knowledge of the 2007 Survey.  The Court notes that the

14  lines on these three pages that will be stricken are general statements introducing the

15  2007 Survey and are not critical to the Court's analysis of RISA's administration of the

16  survey.

17                    **b.    Declarations Contradicted by Prior Testimony**

18          The Ninth Circuit has held that "a party cannot create an issue of fact by an

19  affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mutual Ins.*

20

21          [2] The Court notes that, although it has concluded that the parties' declarations are not a
22  sham and will be considered by the Court, the parties may address any inconsistencies in
    witnesses' testimony on cross-examination at trial.

1  *Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  However, the "rule does not automatically

2  dispose of every case in which a contradictory affidavit is introduced to explain portions

3  of earlier deposition testimony."  *Id*. at 266-67.  Rather, the district court should be

4  concerned with whether the "'sham' testimony flatly contradicts earlier testimony in an

5  attempt to 'create' an issue of fact and avoid summary judgment."  *Id*. at 267.

6  Accordingly, "the district court must make a factual determination that the contradiction

7  was actually a 'sham'" before disregarding the affidavit or declaration.  *Id*.

8                          **i.    Sanders's Declaration**

9          RISA submitted the declaration of Sanders (Dkt. 138) in support of its motion for

10  summary judgment.  In their reply to RISA's response to their motion for partial

11  summary judgment, Plaintiffs argue that "revised" testimony contained in Sanders's

12  declaration is a sham as it is contradicted by her prior deposition testimony and should be

13  disregarded by the Court.  Dkt. 142 at 6-7.  Specifically, Plaintiffs contend that Sanders

14  testified during her deposition that it was not her job to make sure that the information

15  regarding names, addresses, and phone numbers on a list she was given were accurate.

16  Dkt. 142 at 6 (citing Dkt. 129-1 at 14).  However, in her most recent declaration, Sanders

17  states that RISA's list of property owners (attached as Exhibit 2 to her declaration) was

18  extensively fact-checked in September 2007.  Dkt. 138 at 4.

19          As an initial matter, the Court notes that although Plaintiffs state that Sanders's

20  "revised" testimony should be disregarded, they fail to make a proper motion to strike to

21  which RISA could respond.  Regardless, the Court concludes that Plaintiffs have failed to

22

1   show that Sanders's testimony is so contradictory as to warrant a finding that the later

2   testimony is a sham.

3          During her deposition, Sanders stated that counsel was correct when he asked if it

4   was her job to review the files in that she was "to go through all the people on the list and

5   make sure that there was stuff for them" and that counsel was correct when he stated that

6   she was not "involved in getting information that was missing, just verifying the

7   information was already there."  Dkt. 129-1 at 12.  The "list" that was discussed during

8   Sanders's deposition was, according to Sanders, a list of names and addresses of people

9   in Ryderwood that was kept in the RISA office and had been given to her by either Drake

10  or Fischer and had been worked on by Fischer.  *Id.* at 13.  When Sanders was asked

11  whether, in working on the 2007 Survey, it was part of her responsibility to make sure

12  that "the information on the survey about names and addresses and phone numbers" were

13  accurate, she testified that it was not.  *Id.* at 14.  She stated that she did not know when

14  the list of names, addresses, and phone numbers was created but that "[i]t was updated on

15  a regular basis" and that she did not know who updated it after DeBraie was no longer in

16  the office.  Dkt. 129-1 at 14.  Counsel then asked Sanders if it was her "job to go through

17  and make sure . . . that RISA had age verification information for all of the persons on

18  Exhibit 2," to which she said yes, and when asked where she went to look for that

19  information she stated "[i]n the HOPA files that had been established previously."  *Id.* at

20  15.

21         In her declaration, Sanders states that

22

1      [t]he Survey started from a template provided by the RISA Board to
me labeled "HOPA SURVEY 2007." This document is the same as what is
2      appended here at Exhibit B but did not originally include[] the handwritten
notes, which are mine. Those handwritten notes were added by me during
3      the course of completing the age verification survey and reflect my
findings.
4      At the time, I was advised by Ms. Drake that this template document
was based on the survey results from 2006 which had been updated by
5      Joyce Fis[c]her through June or July, 2007 to reflect new residents who
moved to the community after the 2006 survey was completed. My basis
6      for this understanding was two-fold: *First*, Ms. Drake informed me that
Ms. Fischer updated the resident information in June or July of 2007.
7      *Second*, Ms. Drake stated that Ms. Fischer updated the resident information
in an email she sent to Frank Randolph, who was RISA's attorney at the
8      time.

9      Dkt. 138 at 3 (emphasis in original).  Sanders goes on to say that in conducting the 2007

10     Survey, she "compared RISA's HOPA designated files against the template survey

11     document and found that the files were very up-to-date.  Where discrepancies were found

12     I noted them on the survey."  Next, she states that she

13        reviewed a variety of community records to determine if the template was
accurate. This includes, but is not limited, to: (i) resident information saved
14        in RISA's property files from new residents during the year; (ii) the most
recent version of the Ryderwood residents telephone directory, which lists
15        resident names only, not owners; (iii) information from Board members;
(iv) information from other residents; (v) updated resident names provided
16        to me by members of the "sew-and-sew" club (a Ryderwood volunteer
organization that collects names and phone numbers from current
17        residents); (vi) RISA's property index cards showing past and present
residents indexed by street address; (vii) information provided by members
18        of the RISA "welcome wagon"; and (viii) RISA's computer files.

19     *Id*. at 4.

20     While some of Sanders's statements from her deposition, when taken by

21     themselves, may look contradictory to certain statements in her declaration, her testimony

22     as a whole is not so inconsistent that the Court could find her declaration to be a sham.

ORDER - 12

1    Rather, the declaration appears to clarify exactly what Sanders did in reviewing

2    information after receiving the "template" from Drake or Fischer.  Whether or not she

3    understood it to be her "responsibility" to ensure that the existing information was

4    accurate, when looking at what Sanders did in reviewing the information and updating

5    the template, it is clear that she was at least attempting to provide accurate updates to the

6    template.  Accordingly, the Court concludes that Plaintiffs have failed to show that

7    Sanders's declaration is a sham and therefore the Court will consider the declaration as

8    evidence in deciding the motions for summary judgment.

9                            ii.        Fischer's Declaration

10           Plaintiffs submitted the declaration of Fischer in support of their motion for

11   summary judgment.  Dkt. 131.  In its response to the motion, RISA argues that Fischer's

12   declaration is a sham in that it contradicts her prior deposition testimony (Dkt. 137-1) and

13   should be disregarded by the Court.  Dkt. 136 at 3-6, 19-20.

14           Fischer states in her declaration that "[a]t no time did I make any effort to verify

15   that all the data contained on the List was correct or that it was a complete list of all the

16   property owners in Ryderwood."  Dkt. 131 at 2.  RISA argues that Fischer's deposition

17   testimony contradicts the declaration in that she describes the efforts she took to gather

18   information about the residents in Ryderwood including walking the streets and knocking

19   on doors to obtain identifications, making copies of driver's licenses when people would

20   come to the office to pay their dues, and creating property files for each home.  Dkt. 136

21   at 19-20; *see* Dkt. 137-1.  RISA also contends that Fischer's deposition testimony

22   contradicts her declaration because during the deposition she was asked by counsel if she

1    felt that she had completed the 2006 survey and she answered in the affirmative.  Dkt.

2    136 at 19.

3         The Court concludes that RISA has failed to show that Fischer's declaration is a

4    sham.  Fischer states in her declaration that she did not make "any effort to verify that *all*

5    *the data* contained on the List was correct or that it was a *complete* list of *all* the property

6    owners in Ryderwood."  Dkt. 131 at 2 (emphasis added).  This statement does not

7    contradict her deposition testimony in that it appears to the Court that she is clarifying

8    that she did not attempt to verify that the existing data that was on the list given to her

9    was necessarily accurate.  In addition, while she may have believed that her efforts in

10   conducting the survey were complete, this is not necessarily contradictory to her

11   statement that she was not verifying that the list they compiled was a "complete list of all

12   the property owners in Ryderwood."  *Id*.  Therefore, the Court will not disregard

13   Fischer's declaration in deciding the motions for summary judgment.

14                          **iii.    Adams's Declaration**

15        RISA argues, as it did with Fischer, that Adams's declaration (Dkt. 131) submitted

16   by Plaintiffs in support of their motion for summary judgment is a sham because it

17   contradicts her prior deposition testimony (Dkt. 137-4) and should be disregarded by the

18   Court.  Dkt. 136 at 6-7, 20.

19        In her declaration, Adams states that the information she "inserted into the List

20   came from miscellaneous sources, such as post-it notes, ledger cards, and a rolodex.

21   There was no effort made at that time by me or anyone else at TISA to verify that all

22   these sources and notes were correct."  Dkt. 130 at 2.  RISA contends that this statement

1  contradicts her deposition testimony that Fischer and other volunteers were knocking on

2  doors to get identifications and that she made copies of identifications.  Dkt. 136 at 6, 20.

3        The Court concludes that RISA has failed to show that Adams's declaration

4  contradicts her previous testimony.  Rather, Adams, like Fischer, appears to state in her

5  declaration that she and the other volunteers were not verifying the accuracy of

6  information that was already on the "list" but were adding information to that list by

7  gathering identifications and other efforts.  Accordingly, the Court will not disregard

8  Adams's declaration in deciding the motions for summary judgment.

9                    **iv.    Drake's Declaration**

10       Unlike the declarants discussed above, Drake is not a party to this action and

11  therefore the "sham" declaration rule established in *Kennedy* does not necessarily apply.

12  However, RISA argues that in *United States v. Southern California Edison Co.*, 413 F.

13  Supp. 2d 1101, 1113 (E.D. Cal. 2006), the court applies the sham declaration rule to

14  experts involved in the case.  Because the Court concludes, as discussed below, that

15  Drake's declaration is not a sham, the Court need not actually decide whether the sham

16  rule applies to non-party, non-expert witnesses such as Drake.

17       RISA contends that Drake's declaration is a sham and should be disregarded

18  because her statement that RISA surveyed owners is contradicted by "her previously

19  sworn affidavit that RISA surveyed residents."  Dkt. 136 at 21.  Plaintiffs maintain that,

20  to the extent Drake's declaration contradicts previous statements she made, such

21  contradiction "is a statement based on reflection, a correction based on Ms. Drake's

22  having considered her position over time."  Dkt. 142 at 8.

1   The Court concludes that, even if it considers Drake, a non-party witness, and her

2   previous statements, which are not deposition testimony, to be subject to the sham rule,

3   her declaration is not a sham.  Drake states in her declaration that

4           [a]t the time we completed the Survey, it was my understanding that RISA
            needed only to verify the "owners" of the various residences.  Accordingly,

5           I gave direction to the Board that we look through RISA's files in an
            attempt to verify that each "owner" on the list was over the age of 55.  At

6           the time, I did not want to invade any owner's privacy by contacting them
            to require proof of age, especially since I thought the owner's list was

7           sufficient.  Looking back, I realize that we should have been trying to
            verify the ages of the "occupants," not the "owners."  Accordingly, the

8           2007 Survey is a Survey of the age of the owners of certain residences and
            not the age of the actual occupants of those residences.

9
10  Dkt. 132 at 2.  Although these statements contradict certain aspects of the affidavit signed

11  by Drake (Dkt. 135-3 at 2) and Drake's email to RISA's former counsel (Dkt. 138-1), she

12  at least partially explains such contradictions in that what she understood to be her duty

13  in conducting the survey in 2007 is different than her current understanding of what she

14  was supposed to be doing.  Dkt. 132 at 2.  The fact that she used the term "occupants"

15  rather than "owners" in her email to RISA's former counsel and the fact that Sanders's

16  memo to Drake states that there were vacancies, indicating that they were aware of who

17  was actually occupying the homes, does not make Drake's statement that she understood

18  the survey to be of owners, rather than residents, a sham, as the terms residents,

19  occupants, and owners appear to be used somewhat interchangeably, although the

20  meaning of the terms is now important.  Rather, the Court can consider the evidence

21  presented by both parties, including Drake's understanding of what RISA did, as well as

22  Sanders's recollection of such events, in deciding the parties' motions for summary

1    judgment.  Accordingly, the Court concludes that Drake's declaration is not a sham and

2    will be considered by the Court.

3          **3.     Court's Conclusions**

4          Because the Court concludes, as discussed above, that the declarations submitted

5    by Plaintiffs and RISA will be considered by the Court, the Court also concludes that

6    there remain genuine issues of material fact regarding the 2007 Survey that preclude a

7    ruling on summary judgment in either party's favor.  For example, the parties presented

8    conflicting evidence regarding whether the 2007 Survey was conducted in a way that

9    surveyed owners, according to Plaintiffs, or occupants, according to RISA.  In addition,

10   the parties presented conflicting evidence regarding whether the information previously

11   held by RISA was checked for its accuracy before being incorporated into the 2007

12   Survey and to what extent such information was used to prepare the 2007 Survey.

13   Accordingly, the Court concludes that the parties' motions for summary judgment are

14   denied.

15   **C.     Enforcement of RISA's Bylaws**

16         In their motion for summary judgment, Plaintiffs argue that the Court need not

17   reach the issue regarding the validity of the 2007 Survey because RISA cannot enforce

18   age restrictions based on its bylaws as such restrictions are void under Washington law.

19   Dkt. 128 at 9-11.  RISA contends that Washington law requires a party to file an in rem

20   proceeding to strike void provisions from public record using the process laid out in

21   RCW § 49.60.227 and that, because such an action was never filed and RISA's bylaws

22   were not stricken, the bylaws are currently enforceable, assuming RISA is otherwise

1   compliant with HOPA.  Dkt. 136 at 23-24.  Plaintiffs maintain that an action need not be

2   commenced under RCW § 49.60.227 in order for RISA's bylaws to be considered void

3   and therefore unenforceable under RCW § 49.60.224.  Dkt. 142 at 1-2.

4          RCW 49.60.224 provides, in pertinent part, that "[e]very provision in a written

5   instrument relating to real property which purports to forbid or restrict the conveyance,

6   encumbrance, occupancy, or lease thereof to . . . families with children status . . . is void."

7   In addition, RCW 49.60.227 states:

8                  If a written instrument contains a provision that is void by reason of
           RCW 49.60.224, the owner, occupant, or tenant of the property which is
9          subject to the provision or the homeowners' association board may cause
           the provision to be stricken from the public records by bringing an action in
10         the superior court in the county in which the property is located. The action
           shall be an in rem, declaratory judgment action whose title shall be the
11         description of the property. The necessary party to the action shall be the
           owner, occupant, or tenant of the property or any portion thereof. The
12         person bringing the action shall pay a fee set under RCW 36.18.012.
                  If the court finds that any provisions of the written instrument are
13         void under RCW 49.60.224, it shall enter an order striking the void
           provisions from the public records and eliminating the void provisions from
14         the title or lease of the property described in the complaint.

15         Plaintiffs argue that RISA's bylaws are void under RCW 49.60.224 and are

16  therefore unenforceable because RISA was not compliant with HOPA between 2000 and

17  2007, regardless of the fact that no party brought a suit under RCW 49.60.227 to have the

18  provision stricken from public record.  The parties have failed to cite to any case or

19  statutory authority that explains how the Court must deal with a provision that was

20  presumably void at one time under § 49.60.224, but is arguably no longer void and was

21  never stricken from public record under § 49.60.227.  However, the Court concludes that

22  the only logical reading of § 49.60.224, as it applies to this set of facts, is that a provision

1  must be found "void" under that statute, which typically occurs in a proceeding under §

2  49.60.227 in order to be unenforceable.  Here, a proceeding was never instituted and

3  therefore, a finding was never made that RISA's bylaws were void under                    §

4  49.60.224.  Where, as here, the Court is looking at a provision that may or may not be

5  currently enforceable, as opposed to a provision that restricts occupancy on the basis of

6  race, for example, which clearly would be unenforceable, and the provision was not

7  stricken from the public record at a time when it was void under the statute (i.e. when

8  RISA concededly was not compliant with HOPA), whether the provision is currently

9  enforceable remains at issue.  Accordingly, the Court concludes that the issue of whether

10 RISA's bylaws are void under RCW 49.60.224, and therefore unenforceable, remains at

11 issue and depends on RISA's ability to show compliance with HOPA.  As the Court

12 discussed above, triable issues of fact remain for a jury to decide in order for the Court to

13 make a legal determination regarding RISA's compliance with HOPA and thus, the

14 enforceability of its bylaws.

15                                          **III. ORDER**

16        Therefore, it is hereby **ORDERED** that Plaintiffs' motion for partial summary

17 judgment (Dkt. 128) and RISA's motion for summary judgment regarding 2007 Survey

18 (Dkt. 133) are **DENIED**.

19        Dated this 20th day of July, 2012.

20

21

22

BENJAMIN H. SETTLE
United States District Judge