1

2

3            UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
4                    AT TACOMA

5   RAYMOND T. BALVAGE, et al.,

6                    Plaintiffs,              CASE NO. C09-5409 BHS

7   v.                                        ORDER GRANTING IN PART
                                              AND DENYING IN PART
8   RYDERWOOD IMPROVEMENT AND                 DEFENDANT'S MOTION FOR
    SERVICE ASSOCIATION, INC.,                SUMMARY JUDGMENT
9
                     Defendant.

10

11       This matter comes before the Court on Defendant Ryderwood Improvement and

12   Service Association's ("RISA") motion for summary judgment (Dkt. 186). The Court has

13   considered the pleadings filed in support of and in opposition to the motion and the

14   remainder of the file and hereby grants in part and denies in part the motion for the

15   reasons stated herein.

16                           **I. PROCEDURAL HISTORY**

17       On November 2, 2012, Plaintiffs filed their third amended complaint against RISA

18   asserting three claims for relief, including that RISA committed acts in violation of 42

19   U.S.C. § 3617.  Dkt. 169 ¶¶ 78–83 ("Retaliation claim").

20       On April 18, 2013, RISA filed a motion for summary judgment on Plaintiffs'

21   Retaliation claim.  Dkt. 186.  On May 6, 2013, Plaintiffs responded.  Dkt. 197.  On May

22   10, 2013, RISA replied.  Dkt. 202.

ORDER - 1

## II. FACTUAL BACKGROUND

Ryderwood is an area in Cowlitz County, Washington, that currently consists of approximately 270 single family homes.  Dkt. 16, Exh. A at 10.  In 1953, Senior Estates, Inc. platted this area as "Ryderwood No. 1."  Dkt. 24, Exh. A.  The Ryderwood properties were devised by deeds and were subject to identical covenants and restrictions.  *See id.*, Exhs. A and B.

In July of 1953, RISA was incorporated.  Dkt. 24, Exh. C.  In 1975, RISA amended its bylaws and recorded them at the office of the County Recorder of Cowlitz County.  *Id.*, Exh. D. The revised bylaws stated that:

> The qualifications for ownership or purchase of a home within [Ryderwood] are:
> Must be a bona-fide recipient of an annuity or a pension,
> Must not be less than fifty-five years of age,
> Must have no additional, permanent occupants of the home (other than the spouse) who do not meet the above requirements.

*Id.*, Exh. D. at 1.

Apparently, in 2008, some residents, including some Plaintiffs, resigned from RISA.  This resignation eventually led to the filing of this lawsuit in June 2009.  Plaintiffs allege that RISA has performed numerous acts of retaliation against Plaintiffs for exercising their rights under the Fair Housing Act.  The alleged acts of retaliation range from threats to have individuals arrested for using "members only" areas of the community to instituting foreclosure actions against a named plaintiff's home.  RISA has submitted a chart summarizing these allegations.  *See* Dkt. 188, Declaration of Alicia B. Pierce ("Pierce Dec."), ¶¶ 8–12.

1

**III. DISCUSSION**

2      RISA moves for the entry of judgment on Plaintiffs' Retaliation claim.  Dkt. 186.

3  Plaintiffs counter that there are numerous issues of fact that necessitate a trial.  Dkt. 197.

4  Neither Plaintiffs nor RISA attempted to address each specific alleged act, and the Court

5  will not engage in that kind of detailed analysis.  Instead, the Court is hopeful that the

6  following discussion and order will set parameters for what acts may go to trial after

7  subsequent proceedings.

8  **A.      Summary Judgment Standard**

9      Summary judgment is proper only if the pleadings, the discovery and disclosure

10 materials on file, and any affidavits show that there is no genuine issue as to any material

11 fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

12 The moving party is entitled to judgment as a matter of law when the nonmoving party

13 fails to make a sufficient showing on an essential element of a claim in the case on which

14 the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

15 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

16 could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

17 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

18 present specific, significant probative evidence, not simply "some metaphysical doubt").

19 *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

20 if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

21 jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

22

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Retaliation**

The FHA protects individuals from certain types of retaliatory conduct. Specifically, the FHA provides that it is

> unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the Act].

42 U.S.C. § 3617. The U.S. Department of Housing and Urban Development ("HUD") has identified five non-exclusive examples of the type of conduct prohibited under § 3617:

(1) Coercing a person, either orally, in writing, or by other means, to deny or limit the benefits provided that person in connection with the sale or rental of a dwelling or in connection with a residential real estate-related transaction because of race, color, religion, sex, handicap, familial status, or national origin.

(2) Threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons.

(3) Threatening an employee or agent with dismissal or an adverse employment action, or taking such adverse employment action, for any effort to assist a person seeking access to the sale or rental of a dwelling or seeking access to any residential real estate-related transaction, because of the race, color, religion, sex, handicap, familial status, or national origin of that person or of any person associated with that person.

(4) Intimidating or threatening any person because that person is engaging in activities designed to make other persons aware of, or encouraging such other persons to exercise, rights granted or protected by this part.

(5) Retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act.

24 CFR § 100.400(c).

To present a prima facie claim for retaliation, plaintiffs must show (1) protected activity, (2) adverse action by defendant against plaintiffs, and (3) a causal link between the activity and the adverse action. *See, e.g., Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). If plaintiffs meet their burden, then the burden shifts to defendant to show a legitimate non-retaliatory reason for the allegedly adverse action. *Id*. If the defendant meets its burden of production, the burden of persuasion shifts back to the plaintiff to show that the defendant's proffered reason is not worthy of credence or that

1    the reason is mere pretext for a retaliatory action.  *Id.*; *see also Reeves v. Sanderson*

2    *Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

3        Upon review of the briefs and accompanying material, it is clear that this motion is

4    more about the scope of alleged conduct that could be considered retaliatory.  For

5    example, Plaintiffs allege that

6        RISA acted wrongfully and unlawfully by taking actions, by causing or
         allowing others to take actions, and/or in not preventing or dissuading
7        others from taking actions to retaliate against Plaintiffs and to otherwise
         take actions which were or are in violation of 42 U.S.C. § 3617.

8
     Dkt. 169, ¶ 79.  According to Plaintiffs' discovery responses, this includes acts
9
     committed by
10
         (i) residents of Ryderwood; (ii) third-parties, such as the community pastor,
11       the garbage collector, and postal employees; and (iii) unidentified persons,
         such as the Balvage Plaintiffs' claim that "[u]nknown members/owner of
12       RISA interfere[d] with our quiet enjoyment of property and intimidate[d] us
         as they r[o]de past us on their bicycles.
13
     Pierce Dec., ¶¶ 8–12.  While such experiences may be unpleasant, ill will among
14
     neighbors and adverse experiences with third parties are not actionable as retaliation for
15
     filing an FHA complaint.  Plaintiffs fail to recognize this as they have even alleged acts
16
     that *preceded* the filing of the FHA complaint, which is the protected activity in question.
17
     The Court's analysis covers four categories of actions, and the Court grants summary
18
     judgment on some of these actions.  The Court denies summary judgment on some types
19
     of actions and sets parameters for the types of alleged acts that may proceed to trial.
20

21

22

1    **1.    Timing**

2         With regard to timing, RISA contends that any alleged action that occurred prior

3    to the filing of the complaint is not cognizable.  Dkt. 186 at 18–19.  For example, some

4    Plaintiffs allege that RISA retaliated against them by posting their names on a list of

5    Ryderwood residents that sent letters of resignation to RISA.  Pierce Dec., ¶ 11.  The list

6    is dated March 3, 2008.  Dkt. 190, Declaration of Richard Ross ("Ross Dec."), Exh. C.

7    Plaintiffs fail to respond to RISA's contention or explain how this act could possibly be

8    retaliatory for a complaint that was filed sixteen months later; there can be no retaliation

9    for a protected act that has not occurred.  *See* 24 CFR § 100.400(c)(5).  Therefore, the

10   Court grants RISA's motion as to any act that occurred before any named plaintiff

11   engaged in a protective activity.

12        It is important to note that there were only four named plaintiffs in the original

13   complaint filed July 7, 2009.  *See* Dkt. 1.  Although these named plaintiffs were alleged

14   class representatives, the class was never certified and no other plaintiffs engaged in a

15   protective activity at that time.  The remainder of the current named plaintiffs engaged in

16   a protected activity on April 28, 2010, when they filed a motion to amend the complaint.

17   Accordingly, different dates apply to different individuals.

18        The practical effect of this finding is that the majority of specific alleged adverse

19   acts do not support a claim for retaliation.  For example, Plaintiff Sharon Marie Banta

20   responded to discovery requests listing 23 alleged acts of retaliation, only two of which

21   are dated after she joined the lawsuit as a named plaintiff.  Pierce Dec., Exh. 5.  Although

22   some events are undated, the alleged adverse actions were directed at non-RISA members

1    in general and will be discussed in a separate section of this order.  However, with regard

2    to the dated acts, RISA is entitled to judgment that, even if true, Ms. Banta could not

3    possibly win relief.

4          **2.**      **Third Parties**

5          RISA argues that it is not liable for the actions of non-member, third parties.  Dkt.

6    186 at 12–14.  For example, Plaintiffs Bob and Diana White ("Whites") claim that RISA

7    is retaliating against them by foreclosing on their home.  Pierce Dec., ¶ 10.  Based on the

8    information submitted by RISA, this is a complete misrepresentation of the foreclosure.

9    RISA submitted a complaint for foreclosure in state court alleging that an entity named

10   SWIFFT is foreclosing on the Whites' home.  Ross Dec., Exh. D.  RISA contends, and

11   Plaintiffs do not dispute, that SWIFFT is the group formed by Plaintiffs to equally share

12   the cost of litigation.  Dkt. 186 at 13.  The Court finds it abundantly clear that the

13   foreclosure is not an adverse action by RISA.

14         Additionally, some Plaintiffs allege that RISA influenced the relief postmaster and

15   garbage collector to stop service at resigning members' houses.  For example, Alfred and

16   Gloria Leach declare that "Jeff Cummins, owner/operator of Community Waste &

17   Recycling, did threaten us by sending a letter stating, 'I am no longer allowed to pick up

18   any can/cans of any household that is not a member of RISA.'"  Pierce Dec., ¶ 10, No.

19   69.  Even if this could be considered an adverse act of interference by RISA, Plaintiffs

20   have failed to establish a causal relationship between the act and themselves because the

21   refusal of service was directed at all members that have resigned from RISA, not as to

22

1  members that filed the complaint.  Therefore, the Court grants RISA's motion on this and

2  similar alleged acts of retaliation.

3        **3.      Acts by Owner/Members**

4        RISA contends that it is not responsible for alleged acts taken by members of the

5  association.  Dkt. 186 at 12–15.  Plaintiffs counter that they "have alleged such a

6  pervasive and ongoing pattern of retaliatory conduct that defendant is deemed to be

7  responsible for it."  Dkt. 197 at 5 (citing *Halprin v. The Prairie Single Family Homes of*

8  *Dearborn Park Association*, 388 F.3d 327, 330 (7th Cir. 2004), and *Bloch v. Frischholz*,

9  587 F.3d 771 (7th Cir. 2009)).  These cases are easily distinguishable and far from

10  persuasive.  *Halprin* was not a retaliation case; it dealt with numerous members of an

11  association conspiring to intimidate and threaten another member of the association based

12  on the victim's religious beliefs.  388 F.3d at 328.  Similarly, *Bloch* involved acts of

13  intentional discrimination based on an individual's religion.  587 F.3d 771.  Therefore,

14  the Court declines to adopt Plaintiffs' proposition.

15        Next, Plaintiffs argue that RISA may be held liable for its members' actions

16  because of its "independent failure to act so as to halt the ongoing retaliatory conduct

17  against plaintiffs."  Dkt. 197 at 5 (citing *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 365

18  (8th Cir. 2003)).  In *Neudecker*, the plaintiff "repeatedly complained to Boisclair

19  management about the harassment to no avail . . . ."  *Id*. at 365.  In this case, there is no

20  evidence that any Plaintiff repeatedly complained to RISA or requested that RISA halt

21  the ongoing retaliatory conduct.  Therefore, the Court grants RISA's motion as to any

22

1  "failure to act" claim for retaliation absent a showing that the particular victim put RISA

2  on notice of retaliatory conduct by RISA members.

3          Plaintiffs also argue that, under the doctrine of respondeat superior, RISA is liable

4  for the acts of its agents, which includes its members.  Plaintiffs, however, fail to show

5  that RISA directed its members to harass, intimidate, or threaten any named plaintiff.

6  Plaintiffs also fail to show that any alleged act was done for the benefit of RISA.

7  Therefore, the Court grants RISA's motion as to any act advanced under the theory of

8  respondeat superior.

9          With regard to the remainder of Plaintiffs' alleged adverse actions by RISA

10  members, they contend that

11          [g]enuine issues of material fact remain regarding the scope and extent of
           the pattern of retaliatory conduct, defendant's knowledge of the adverse
12         actions taken against plaintiffs, and defendant's responsibility for failing to
           act to stop the retaliatory actions.
13

14  Dkt. 197 at 5.  Conclusory, nonspecific statements in affidavits are not sufficient, and

15  missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89

16  (1990).  Although the Court recognizes that the alleged adverse acts are too numerous to

17  fully address each one in this round of briefing, it is not the Court's task "to scour the

18  record in search of a genuine issue of triable fact. We rely on the nonmoving party to

19  identify with reasonable particularity the evidence that precludes summary judgment."

20  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Having stated that, the Court is

21  unable to completely close the door on the possibility that RISA could be held

22  responsible for specific acts of RISA members.  The Court will rely on the experienced

1  attorneys to narrow the number of alleged acts to those that fit within the narrow scope of

2  failing to act.  The Court may also require an offer of proof before any evidence is

3  admitted on this issue at trial.  Therefore, the Court grants RISA's motion with the

4  exception of any failing to act claims.

5        **4.**      **Acts by Board Members**

6          According to RISA's bylaws, RISA is a corporation that acts through its board of

7  trustees and officers.  Ross Dec., Exh. B.  Plaintiffs allege numerous act of retaliation by

8  the trustees and officers, both in their official capacity (Pierce Dec, ¶ 8) and in their

9  personal capacity (*id*. ¶ 9).  RISA contends that Plaintiffs have failed to show a prima

10  facie case of retaliation and, even if Plaintiffs met their burden, RISA has legitimate non-

11  retaliatory reasons for its actions.  Dkt. 186 at 23.  It is undisputed that RISA acted

12  adversely toward some of Plaintiffs on some occasions.  For example, RISA excluded

13  non-paying members from members' areas and services.  RISA also filed liens against

14  the homes of the non-paying members.  The issues, however, are whether Plaintiffs can

15  show a causal link between these actions and this lawsuit and whether RISA's reasons for

16  acting were legitimately non-retaliatory.  With regard to the former issue, the Court finds

17  that most, if not all, of RISA's alleged actions were directed at non-paying members in

18  general and not toward the select group of non-paying members that are involved in this

19  lawsuit.  Although the Court declines at this time to apply this reasoning to each specific

20  alleged act, the Court will conclude that, in order to proceed to trial, Plaintiffs must show

21  that they were treated differently than the other non-paying members in connection with

22  the collection of dues.

1    With regard to RISA's legitimate reasons, the Court finds that RISA enforcing its

2  bylaws is a legitimate reason for any such action.  The Court also finds that limiting a

3  common area and a common service to paying members is a legitimate reason for such

4  action.  Although the Court declines to apply this reasoning to each specific alleged act,

5  the Court concludes that Plaintiffs must make an offer of proof as to pretext before any

6  relevant evidence will be admitted at trial.

7    Finally, Plaintiffs have alleged adverse actions by board members and officers

8  while acting in their personal capacity.  "[W]e do not want, and we do not think Congress

9  wanted, to convert every quarrel among neighbors in which a racial or religious slur is

10 hurled into a federal case."  *Halprin v. Prairie Single Family Homes of Dearborn Park*

11 *Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004).  This is even more true for alleged acts of

12 intimidation at depositions or alleged acts of swerving a car toward an individual.  Pierce

13 Dec., ¶ 9.  Therefore, the Court grants RISA's motion for summary judgment on the five

14 alleged acts by board members acting in their personal capacity.

15                                        **IV. ORDER**

16    Therefore, it is hereby **ORDERED** that RISA's motion for summary judgment

17 (Dkt. 186) is **GRANTED in part** and **DENIED in part** as stated herein.

18    Dated this 28th day of May, 2011.

19

20

21 BENJAMIN H. SETTLE
   United States District Judge

22