Honorable Benjamin H. Settle
Noted for Consideration: December 6, 2013

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RAYMOND T. BALVAGE and DEBORAH A. BALVAGE, husband and wife, *et al.*<br><br>Plaintiffs,<br><br>vs.<br><br>RYDERWOOD IMPROVEMENT AND SERVICE ASSOCIATION, INC., a Washington non-profit corporation,<br><br>Defendant. | NO. C09-5409 BHS<br><br>SUPPLEMENTAL DECLARATION OF STEVE GOLDSTEIN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: REMAINING RETALIATION CLAIMS |

I, Steve Goldstein, am competent to testify to the matters set forth herein and make this declaration of my own personal knowledge and belief.

1. I am an attorney for Defendant Ryderwood Improvement and Service Association, Inc. ("RISA") in the above-captioned matter.

2. I was present at the mediation in September with Judge Arnold. A number of residents showed up at the mediation to show support for the Board. Judge Arnold allowed them to stay for his opening remarks.

SUPPLEMENTAL DECLARATION OF GOLDSTEIN ISO SUMMARY JUDGMENT RE: REMAINING RETALIATION CLAIMS
661119.1/120513 1522/61840140
- 1 -

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

3. After the opening remarks, I explained to the non-Board member residents that since they were not parties, they would not be able to stay at the mediation. They all left at that point. I was not made aware of any unruly behavior associated with the Ryderwood residents.

4. Attached is a copy of the unpublished Washington Court of Appeals opinion in Weaver v. RISA.

5. I declare under penalty of perjury that the foregoing is true and correct.

                        *s/ Steve Goldstein*
                        Steve Goldstein

Executed this 5th day of December, 2013,
at Seattle, Washington.

SUPPLEMENTAL DECLARATION OF
GOLDSTEIN ISO SUMMARY JUDGMENT RE:
REMAINING RETALIATION CLAIMS — - 2 -
661119.1/120513 1522/61840140

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

# CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of December, 2013, I electronically filed the foregoing document, Supplemental Declaration of Steve Goldstein in Support of Defendant's Motion for Summary Judgment Re: Remaining Retaliation Claims, with the Clerk of the U.S. District Court for the Western District of Washington using the CM/ECF system, which will send notification of such filing to The Honorable Benjamin H. Settle and all counsel of record:

**Counsel for Plaintiff:**
Stephen G. Leatham, WSBA #15572
HEURLIN, POTTER, JAHN, LEATHAM,
HOLTMANN & STOKER, P.S.
211 E. McLoughlin Boulevard, Suite 100
P. O. Box 611
Vancouver, WA 98666-0611

**Plaintiffs Pro Se**
Bob and Diane White
312 Jackson Street
Ryderwood, WA 98581
Email: bobwhitehelps@gmail.com

By   *s/ Steve Goldstein*
　　Steve Goldstein
　　Attorneys for RISA
　Betts, Patterson & Mines, P.S.
　701 Pike Street, Suite 1400
　Seattle, WA 98101-3927
　Phone: (206) 292-9988
　Fax: (206) 343-7053
　Email: sgoldstein@bpmlaw.com

SUPPLEMENTAL DECLARATION OF
GOLDSTEIN ISO SUMMARY JUDGMENT RE:
REMAINING RETALIATION CLAIMS - 3 -
661119.1/120513 1522/61840140

Betts
Patterson
Mines
One Convention Place
Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

# Attachment

Westlaw.

Page 1

Not Reported in P.3d, 157 Wash.App. 1038, 2010 WL 3232358 (Wash.App. Div. 2)
**(Cite as: 2010 WL 3232358 (Wash.App. Div. 2))**

C

NOTE: UNPUBLISHED OPINION, SEE RCWA 2.06.040

Court of Appeals of Washington,
Division 2.
Charles E. WEAVER and Susan M. Weaver, a marital community, Appellants,
v.
**RYDERWOOD** IMPROVEMENT AND SERVICE ASSOCIATION, Respondent.

No. 39755-2-II.
Aug. 17, 2010.

West KeySummary**Common Interest Communities** 83T ⇌68(2)

83T Common Interest Communities
    83TIV Unit Owners' Association
        83Tk66 Powers, Duties, and Functions
            83Tk68 Constitution, By-Laws, and Rules
                83Tk68(2) k. Validity in general. Most Cited Cases
      (Formerly 108k69(1))

**Common Interest Communities** 83T ⇌68(3)

83T Common Interest Communities
    83TIV Unit Owners' Association
        83Tk66 Powers, Duties, and Functions
            83Tk68 Constitution, By-Laws, and Rules
                83Tk68(3) k. Adoption; amendment; repeal. Most Cited Cases
      (Formerly 108k69(1))

    A retirement community's bylaws complied with the statute of frauds, and therefore were enforceable against homeowners in the community as covenants. The homeowners' deed clearly indicated the intent to preserve the community as a retirement community. The deed also granted the community authority to assess fees against homeowners and to modify the covenants and restrictions set forth in the deed by recording an instrument with the county. The community recorded its bylaws with the county. West's RCWA 64.04.010, 64.04.020.

Appeal from Cowlitz Superior Court; Honorable James E. Warme, J.
Charles Weaver (Appearing Pro Se), Susan Weaver (Appearing Pro Se), Ryderwood, WA, for Appellants.

Karen O. Kasey, Hoffman Hart & Wagner, Portland, OR, Steven Goldstein, Richard D. Ross, Betts Patterson & Mines PS, Seattle, WA, for Respondent.

UNPUBLISHED OPINION
QUINN-BRINTNALL, J.

    *1 Charles and Susan Weaver appeal the trial court's summary judgment order in favor of Ryderwood Improvement and Service Association, Inc. (RISA). The Weavers contend that the trial court erred in finding that RISA's bylaws were binding against them as covenants. The Weavers also contend that the trial court erred by granting summary judgment in favor of RISA on their housing discrimination claim. Because the Weavers present no genuine issues of material fact supporting their claims, the trial court properly granted summary judgment in favor of RISA. Accordingly, we affirm.

FACTS
Background Facts

A. Creation of Ryderwood and RISA

    Ryderwood is an unincorporated retirement community in Cowlitz County, Washington. In 1953, Senior Estates, Inc. recorded the "PLAT OF RYDERWOOD NO. 1." Clerk's Papers (CP) at 642. That same year, RISA filed its articles of incorporation with the Secretary of State. The articles state RISA's purpose as follows:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in P.3d, 157 Wash.App. 1038, 2010 WL 3232358 (Wash.App. Div. 2)
**(Cite as: 2010 WL 3232358 (Wash.App. Div. 2))**

1. To supply its members in the town of Ryderwood, Washington, with water; to provide water, sewage and garbage services to such members, and to acquire all necessary facilities for the furnishing of these services to its members.

2. To perform such other services for its members as may be determined from time to time by the Board of Trustees.

3. To charge fees for services supplied to cover the costs thereof.

CP at 469.

On August 14, 1975, RISA recorded its bylaws with Cowlitz County. RISA's bylaws limit membership in RISA to owners and residents in Ryderwood. RISA's bylaws also limit who may purchase or occupy a home located in Ryderwood:

The qualifications for ownership or purchase of a home within the boundaries of the area under the jurisdiction of the corporation are:

Must be a bona-fide recipient of an annuity or a pension.

Must not be less than fifty-five years of age

Must have no additional, permanent occupants of the home, (other than the spouse) who do not meet the above requirements. (Exceptions to the last requirement may be made by the Board of Trustees in the event that health or personal care of either party justifies such permission.)

CP at 1239.

B. History of the Weavers' Property

On January 18, 1967, Lois E. Barney purchased property in Ryderwood from Senior Estates. The first paragraph of Barney's deed provides,

[Senior Estates] has acquired and developed the real property known and platted as "Ryderwood No. 1, Ryderwood, Washington", according to plat thereof recorded in Volume 8 of plats at page 54, records of the Auditor of Cowlitz County, Washington, as a community to be occupied by and for the use and benefit of persons who are bona fide recipients of a pension or retirement annuity;.... and WHEREAS, in order to protect and preserve said community for said purposes, it is the intent and purpose of the Grantor and the Grantee herein named to impose and enforce certain covenants and conditions hereinafter in this deed set forth, for the benefits of Grantor and Grantor's assigns.

*2 CP at 136.

Barney's deed contained certain conditions and restrictions, designated as A-1 through A-11, which, by the terms of the deed, expired in July 1975. The deed also contained conditions without an expiration date, designated as B-1 through B-4. Condition B-2(2) provides,

In the event of Grantee's death and in the further event that said property is not devised or descends to a person or persons who is or are not bona fide recipients of a pension or retirement annuity, then within six months from and after the time Grantor shall receive notice of such fact, Grantor shall have the option to repurchase said property.

CP at 138. In addition, condition B-4 provides, The Grantee for himself, his heirs, sucessors and assigns, covenants that the property conveyed under this Deed shall be subject to an annual charge in such amount as will be fixed by the Grantor, its successors or assigns, not, however, exceeding Grantee's pro rata share of the actual cost thereof as to the property herein conveyed. The assigns of the Grantor may include such association, corporation or mutual company which may hereafter be organized for the purposes referred to in this paragraph and in such case the sums in this paragraph provided for shall be payable to such association, corporation or mutual company....

The Grantor, or Grantor's assigns, may at any

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in P.3d, 157 Wash.App. 1038, 2010 WL 3232358 (Wash.App. Div. 2)
**(Cite as: 2010 WL 3232358 (Wash.App. Div. 2))**

time transfer and assign their rights to enforce the covenants and conditions herein contained to RYDERWOOD IMPROVEMENT AND SERVICE ASSOCIATION, or to any other person, firm, association or corporation which thereupon shall have the right to enforce the covenants and conditions herein contained in the same manner and to the same extent as if enforcement thereof was being initiated by the Grantor.

CP at 138-39. Barney's deed also states, "Grantor, on behalf of Grantor and its assigns, hereby reserves the right, at its discretion, to modify or terminate any or all of the foregoing conditions by recording an instrument in the office of the County Recorder of Cowlitz County, Washington." CP at 138.

On August 26, 1971, Barney sold the property to Arthur and Lela Daley. The Daleys' deed provided that they were subject to the same conditions and restrictions as provided in Barney's 1967 deed from Senior Estates. The Daleys' deed also stated, "The Grantee, for himself, his heirs, successors and assigns, covenants that the property conveyed under this Deed shall be subject to an annual charge in such amount as will be fixed by Ryderwood Improvement and Service Association." CP at 142.

On June 10, 1977, the Daleys transferred their property to Dorothy Weaver[FN1] by statutory warranty deed; the deed provided that the property was subject to reservations, restrictions, and easements of record. On March 29, 2005, Susan Weaver purchased the property from Dorothy Weaver's estate as her "sole and separate property." CP at 200. The Weavers' 2005 title report indicated that RISA's bylaws, covenants, conditions, and restrictions encumbered the property. On March 28, 2005, Susan Weaver signed a document certifying her membership in RISA; the document states that she is a RISA member and "subject to all terms and provisions set forth in the Articles of Incorporation and By-Laws of [RISA]." CP at 506. The document also lists Charles Weaver as her spouse and includes a photocopy of Charles Weaver's driver's license. In addition, Charles Weaver has worked with RISA as board treasurer and as a "legal liaison." On March 21, 2008, following RISA's partial summary judgment motion to dismiss Charles Weaver from the lawsuit because he did not own any interest in the Ryderwood property, Susan Weaver executed a quitclaim deed conveying the property to their marital community.

> FN1. Dorothy Weaver is not related to the appellants.

Procedural Facts

*3 On November 6, 2007, the Weavers filed a complaint against RISA for unfair housing practices and to quiet title on their property. In his response to an interrogatory, Charles Weaver admitted that he purchased his home with the understanding that Ryderwood was a 55 and older community. RISA moved for summary judgment on December 17, 2008. Charles Weaver's declaration opposing RISA's summary judgment motion admits that Senior Estates founded Ryderwood as a retirement community and that he was aware that his 2005 title report indicated RISA's bylaws and other covenants encumbered his property.

The trial court heard oral arguments on RISA's motion on March 11, 2009. At the hearing, the trial court made an oral ruling granting summary judgment in favor of RISA on the Weavers' quiet title action challenging the enforceability of the RISA bylaws; the trial court appeared to reason that the bylaws were enforceable as an equitable covenant.[FN2] The trial court stayed its ruling of RISA's summary judgment motion on the Weavers' housing discrimination claim; it granted the Weavers 90 days to present evidence showing that RISA's Housing for Older Persons Act (HOPA) survey was flawed. The trial court entered its written partial summary judgment order on March 26, 2009.

> FN2. In its oral ruling, the trial court also reasoned that the doctrine of laches barred the Weavers from challenging the enforce-

Case 3:09-cv-05409-BHS   Document 248   Filed 12/05/13   Page 8 of 13

Page 4

Not Reported in P.3d, 157 Wash.App. 1038, 2010 WL 3232358 (Wash.App. Div. 2)
**(Cite as: 2010 WL 3232358 (Wash.App. Div. 2))**

ability of RISA's bylaws. But the trial court appeared to have abandoned this reasoning in a later order clarifying its decision to grant partial summary judgment in favor of RISA.

On March 20, 2009, the Weavers filed a motion for reconsideration and clarification of the trial court's partial summary judgment order. On April 20, 2009, the trial court entered an order clarifying its partial summary judgment order and denying the Weavers' motion for reconsideration:

HOLDING: The adoption of the 1975 By-laws of RISA created an enforceable covenant for all Ryderwood residents who did not specifically reject the By-law.

Reasoning: The 1975 adoption of the By-law which created the restriction on ownership was an agreement of all the members of RISA as to the future of Ryderwood. It was recorded with the county Auditor and became a matter of public record. It was an agreement which was intended to run with the land. The By-law in question here was in fact an express agreement of all the members. The fact that it was denominated a "By-law" rather than a "Covenant", "Agreement" or other word of art is not controlling. It was in fact an agreement.

Because it was an agreement, withdrawing from the RISA or being a member of RISA is of no consequence now. The restriction was to run with the land and was not personal to any member.

The fact that the restriction is not incorporated into any deed is not controlling. A duly recorded agreement among all property owners does not have to be incorporated into a deed to be effective. Effective notice of the agreement is given by recording the agreement.

In 1975 the residents of Ryderwood created a retirement community. The question of whether that community is in violation of the Fair Housing Act or is allowed by the Housing for Older People Act depends upon compliance with that act. The plaintiffs may show that Ryderwood is not in compliance with HOPA by conducting their own survey.

*4 The plaintiffs' motion for reconsideration is denied.

CP at 1561-62.

The Weavers admit that they did not conduct an additional survey of Ryderwood and did not present any additional evidence showing that RISA's HOPA survey was inaccurate. On June 30, 2009, RISA moved for a final order on its motion for summary judgment, which the trial court granted in RISA's favor on July 20, 2009. The Weavers timely appeal.

## ANALYSIS
Standard of Review

We review an order on summary judgment de novo. *Hisle v. Todd Pac. Shipyards Corp.,* 151 Wash.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The moving party bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.,* 115 Wash.2d 506, 516, 799 P.2d 250 (1990). We view all facts in the light most favorable to the nonmoving party.[FN3] *Vallandigham v. Clover Park Sch. Dist. No. 400,* 154 Wash.2d 16, 26, 109 P.3d 805 (2005). Summary judgment is appropriate only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham,* 154 Wash.2d at 26, 109 P.3d 805.

> FN3. RISA asserts that the Weavers have failed to challenge "the factual predicates

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in P.3d, 157 Wash.App. 1038, 2010 WL 3232358 (Wash.App. Div. 2)
**(Cite as: 2010 WL 3232358 (Wash.App. Div. 2))**

for [the trial court's] conclusions" and requests that we deem such "factual predicates" as verities on appeal. Br. of Resp't at 26. RISA appears to misunderstand the de novo standard of review appropriate for a summary judgment order.

The nonmoving party must make a showing sufficient to establish each element on which that party will bear the burden of proof at trial. *Miller v. Likins,* 109 Wash.App. 140, 145, 34 P.3d 835 (2001). If the nonmoving party fails to make a showing sufficient to establish the existence of an essential element, summary judgment is appropriate because there can be " 'no genuine issue [of] material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Young v. Key Pharm., Inc.,* 112 Wash.2d 216, 225, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see Miller,* 109 Wash.App. at 145, 34 P.3d 835. But the nonmoving party may not rely on speculation, argumentative assertions that unresolved facts remain, or having its affidavits considered at face value. *Seattle Police Officers Guild v. City of Seattle,* 151 Wash.2d 823, 848, 92 P.3d 243 (2004) (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.,* 106 Wash.2d 1, 13, 721 P.2d 1 (1986)). "If the moving party satisfies its burden, the nonmoving party must present evidence that demonstrates that material facts are in dispute." *Atherton,* 115 Wash.2d at 516, 799 P.2d 250. If the nonmoving party fails to do so, then summary judgment is proper. *Vallandigham,* 154 Wash.2d at 26, 109 P.3d 805 (citing *Atherton,* 115 Wash.2d at 516, 799 P.2d 250).

RISA's Bylaws Enforceable as Covenants

The Weavers contend that the trial court erred when it ruled that RISA's bylaws were covenants enforceable against Ryderwood residents. Specifically, the Weavers assert that RISA's bylaws do not meet all the elements necessary to establish a covenant because the bylaws violate the statute of frauds. They also assert that the bylaws are not enforceable against them because RISA did not establish that all of Ryderwood's members had agreed to be bound by them. We affirm.

*5 A covenant is " '[a]n agreement or promise of two or more parties that something is done, will be done, or will not be done. In modern usage, the term covenant generally describes promises relating to real property that are created in conveyances or other instruments.' " *Hollis v. Garwall, Inc.,* 137 Wash.2d 683, 690-91, 974 P.2d 836 (1999) (quoting 9 Richard R. Powell, Powell on Real Property § 60.01[2], at 60-5 (1998)). Generally, there are two types of covenants, equitable and real. *Dickson v. Kates,* 132 Wash.App. 724, 732, 133 P.3d 498 (2006). In *Lake Limerick Country Club v. Hunt Manufactured Homes, Inc.,* 120 Wash.App. 246, 254, 84 P.3d 295 (2004), this court recognized that Washington generally does not distinguish between types of covenants but acknowledged that our Supreme Court has applied different tests to determine the validity of real versus equitable covenants.[FN4]

> FN4. Some courts refer to the two types of covenants as "real" and "equitable." *See, e.g., Hollis,* 137 Wash.2d at 691, 974 P.2d 836; *Dickson,* 132 Wash.App. at 732, 133 P.3d 498. Regardless of the terminology used, if either test is satisfied, then the covenant is enforceable under Washington law.

A party may enforce a real covenant if it meets the following conditions:

"(1) the covenant[ ] must have been enforceable between the original parties, such enforceability being a question of contract law except insofar as the covenant must satisfy the statute of frauds; (2) the covenant must "touch and concern" both the land to be benefitted and the land to be burdened; (3) the covenanting parties must have intended to bind their successors in interest; (4) there must be vertical privity of estate, *i.e.,* priv-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 3:09-cv-05409-BHS   Document 248   Filed 12/05/13   Page 10 of 13

Page 6

Not Reported in P.3d, 157 Wash.App. 1038, 2010 WL 3232358 (Wash.App. Div. 2)
**(Cite as: 2010 WL 3232358 (Wash.App. Div. 2))**

ity between the original parties to the covenant and the present disputants; and (5) there must be horizontal privity of estate, or privity between the original parties."

*Lake Limerick,* 120 Wash.App. at 254, 84 P.3d 295 (alteration in original) (quoting *Lake Arrowhead Cmty. Club, Inc. v. Looney,* 112 Wash.2d 288, 294-95, 770 P.2d 1046 (1989)).

A party seeking enforcement of an equitable covenant must establish

> "(1) a promise, in writing, which is enforceable between the original parties; (2) which touches and concerns the land or which the parties intend to bind successors; and (3) which is sought to be enforced by an original party or a successor, against an original party or successor in possession; (4) who has notice of the covenant ."

*Lake Limerick,* 120 Wash.App. at 254, 84 P.3d 295 (quoting *Hollis,* 137 Wash.2d at 691, 974 P.2d 836).

RCW 64.04.010 provides that every encumbrance on real property shall be by deed. RCW 64.04.020 provides that every deed shall be in writing and signed by the party bound by it. The Weavers contend that RISA's bylaws are not enforceable against them for failure to comply with the statute of frauds. The Weavers' contention fails for two reasons.

First, the Weavers' deed complies with the statute of frauds and clearly indicates Senior Estates' intent to preserve Ryderwood as a retirement community. The Weavers' deed also grants RISA authority, as Senior Estates' assignee, to assess fees against Ryderwood homeowners and to modify the covenants and restrictions set forth in the deed by recording an instrument with Cowlitz County.[FN5] RISA recorded its bylaws with Cowlitz County on August 14, 1975. The Weavers appear to argue that, notwithstanding the deed provision reserving RISA's right to modify covenants and restrictions, the bylaws are not effective absent evidence that 100 percent of Ryderwood residents had agreed to such a modification. But this court has addressed a similar argument and held that

> FN5. The Weavers also contend that RISA's bylaws are not enforceable as real covenants because they lack horizontal and vertical privity. Specifically, the Weavers contend that RISA lacks privity because it has never owned the Weavers' property. But the Weavers fail to acknowledge language in their deed indicating Senior Estates had assigned its rights to RISA.

*6 "[a]n express reservation of power authorizing less than 100 percent of property owners within a subdivision to adopt new restrictions respecting the use of privately owned property is valid, provided that such power is exercised in *a reasonable manner consistent with the general plan of the development.*"

....

In assessing what constitutes "a reasonable manner consistent with the general plan of the development," we look to the language of the covenants, their apparent import, and the surrounding facts.

*Meresse v. Stelma,* 100 Wash.App. 857, 865, 999 P.2d 1267 (2000) (quoting *Shafer v. Bd. of Trustees of Sandy Hook Yacht Club Estates, Inc.,* 76 Wash.App. 267, 273-74, 883 P.2d 1387 (1994), *review denied,* 127 Wash.2d 1003, 898 P.2d 308 (1995)).

Here, RISA's bylaws modified covenants and restrictions contained in the Weavers' deed by restricting ownership to persons 55 years or older. This modification is consistent with the general plan that Ryderwood function as a retirement community, as evidenced by language in the Weavers' deed reserving ownership in their home to bona fide recipients of a pension or retirement annuity.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in P.3d, 157 Wash.App. 1038, 2010 WL 3232358 (Wash.App. Div. 2)
**(Cite as: 2010 WL 3232358 (Wash.App. Div. 2))**

Additionally, the facts surrounding the modification show that this change in language was necessary to preserve Ryderwood's status as a retirement community without violating state and federal housing discrimination laws.

Second, even assuming that RISA had failed to demonstrate compliance with the statute of frauds, summary judgment is still appropriate because the Weavers concede that they had notice that RISA's bylaws encumbered their property. Thus, RISA can enforce its bylaws against the Weavers as equitable covenants. *See, e.g., Dickson,* 132 Wash.App. at 735, 133 P.3d 498 ("One of the key differences between equitable and real covenants is that an equitable covenant binds successors in possession of burdened land only if they have notice of the covenant."); *Lake Limerick,* 120 Wash.App. at 254, 84 P.3d 295.

Here, RISA has demonstrated that it can meet each of the essential elements to establish that its bylaws are enforceable as covenants, and the Weavers have failed to present any evidence rebutting RISA's proposed evidence. Accordingly, we affirm the trial court's summary judgment order in favor of RISA on the Weavers' quiet title claim.

HOPA Compliance/Weavers' Failure to Establish Housing Discrimination Claim

Next, the Weavers contend that the trial court erred by granting summary judgment in favor of RISA on their housing discrimination claim. We disagree. It is difficult to discern the Weavers' specific contentions with the trial court's summary judgment order on their housing discrimination claim.[FN6] But a review of the record clearly shows that RISA was entitled to summary judgment.

> FN6. The Weavers title this section of their brief, "*Whether the trial court erred when it ruled that the plaintiffs may show that Ryderwood is not in compliance with HOPA by conducting their own survey.*" Br. of Appellant at 8. But the Weavers offer no argument or citations to authority supporting this claim. Accordingly, we decline to address this contention under RAP 10.3(a)(6). *Smith v. King,* 106 Wash.2d 443, 451-52, 722 P.2d 796 (1986) (an assignment of error is waived if lacking argument or citations to legal authority). Pro se litigants are expected to comply with the RAPs. *State Farm Mut. Auto. Ins. Co. v. Avery,* 114 Wash.App. 299, 310, 57 P.3d 300 (2002). Even if we were to address this contention, it lacks merit because absent a showing that RISA's HOPA survey was flawed, the Weavers cannot survive summary judgment. *See Seattle Police Officers Guild,* 151 Wash.2d at 848, 92 P.3d 243 (nonmoving party may not rely on speculation, argumentative assertions that unresolved facts remain or having its affidavits considered at face value); *Miller,* 109 Wash.App. at 145, 34 P.3d 835 (nonmoving party must make a showing sufficient to establish each element on which that party will bear the burden of proof at trial). The trial court here did not err by allowing the Weavers additional time in which to demonstrate facts sufficient to survive summary judgment.

RCW 49.60.222(1) makes it unlawful to discriminate against families with children in real estate transactions. But RCW 49.60.222(6) provides,

> Nothing in this chapter prohibiting discrimination based on families with children status applies to housing for older persons as defined by the federal fair housing amendments act of 1988, 42 U.S.C. Sec. 3607(b)(1) through (3), as amended by the housing for older persons act of 1995, P.L. 104-76, as enacted on December 28, 1995. Nothing in this chapter authorizes requirements for housing for older persons different than the requirements in the federal fair housing amendments act of 1988, 42 U.S.C. Sec. 3607(b)(1) through (3), as amended by the housing for older persons act of 1995, P.L. 104-76, as enacted on

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in P.3d, 157 Wash.App. 1038, 2010 WL 3232358 (Wash.App. Div. 2)
**(Cite as: 2010 WL 3232358 (Wash.App. Div. 2))**

December 28, 1995.

**\*7** 42 U.S.C. § 3607(b)(2)(C) defines "housing for older persons" as
intended and operated for occupancy by persons 55 years of age or older, and-

(i) at least 80 percent of the occupied units are occupied by at least one person who is 55 years of age or older;

(ii) the housing facility or community publishes and adheres to policies and procedures that demonstrate the intent required under this subparagraph; and

(iii) the housing facility or community complies with rules issued by the Secretary for verification of occupancy, which shall-

(I) provide for verification by reliable surveys and affidavits; and

(II) include examples of the types of policies and procedures relevant to a determination of compliance with the requirement of clause (ii). Such surveys and affidavits shall be admissible in administrative and judicial proceedings for the purposes of such verification.

Thus, where an entity such as RISA can demonstrate that it meets the three factors listed in 42 U.S.C. § 3607(b)(2)(C), it is not subject to RCW 49.60.222(1)'s prohibition against discrimination in housing based on family status. Here, RISA presented ample evidence that it complied with the three HOPA factors, which the Weavers have failed to rebut.

First, RISA presented evidence of a 2007 survey of Ryderwood residents showing that 93 percent of available units were occupied by individuals 55 years of age or older. Although, the trial court gave the Weavers additional time to present evidence that RISA's survey was flawed, they failed to do so. Second, RISA presented extensive evidence showing its intent that Ryderwood be a 55 and older community, which included (1) photos of signs posted throughout the community stating it was a 55 and older community, (2) recorded bylaws that limit residency in Ryderwood to persons 55 and older, and (3) deeds indicating that Ryderwood was a retirement community.[FN7] The Weavers did not rebut RISA's evidence that Ryderwood was intended to operate as a 55 and older community and conceded that they purchased their home with the understanding that Ryderwood was a 55 and older community. Last, RISA's HOPA survey included a checklist and copies of acceptable forms of identification showing the ages of Ryderwood's residents. 24 C.F.R. § 100.307. Because the Weavers failed to demonstrate any genuine facts rebutting RISA's evidence that it was HOPA compliant and, thus, not subject to RCW 49.60.222(1)'s prohibition against discrimination in housing based on family status, the trial court properly granted summary judgment in favor of RISA. Accordingly, we affirm.

> FN7. 24 C.F.R. § 100.306(a) lists the following as nonexclusive factors demonstrating intent to operate as housing for persons 55 years of age and older:
>
> (1) The manner in which the housing facility or community is described to prospective residents;
>
> (2) Any advertising designed to attract prospective residents;
>
> (3) Lease provisions;
>
> (4) Written rules, regulations, covenants, deed or other restrictions;
>
> (5) The maintenance and consistent application of relevant procedures;
>
> (6) Actual practices of the housing facility or community; and
>
> (7) Public posting in common areas of statements describing the facility or community as housing for persons 55

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in P.3d, 157 Wash.App. 1038, 2010 WL 3232358 (Wash.App. Div. 2)
**(Cite as: 2010 WL 3232358 (Wash.App. Div. 2))**

years of age or older.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

We concur: ARMSTRONG, P.J., and HUNT, J.

Wash.App. Div. 2,2010.
Weaver v. Ryderwood Imp. and Service Ass'n
Not Reported in P.3d, 157 Wash.App. 1038, 2010 WL 3232358 (Wash.App. Div. 2)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.