UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RAYMOND T. BALVAGE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RYDERWOOD IMPROVEMENT AND SERVICE ASSOCIATION, INC.,<br><br>Defendant. | CASE NO. C09-5409 BHS<br><br>ORDER GRANTING AND DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Ryderwood Improvement and Service Association, Inc.'s ("RISA") motions for summary judgment (Dkts. 241, 249, 251, & 257). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants two motions and denies two motions for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On July 8, 2009, Plaintiffs Raymond and Deborah Balvage and Charles and Susan Weaver, individually and on behalf of their marital communities and on behalf of a class of similarly situated individuals (collectively, "Plaintiffs"), filed a complaint against

RISA. Dkt. 1. On November 10, 2009, Plaintiffs filed an amended complaint. Dkt. 11. On June 2, 2010, Plaintiffs filed their second amended complaint. Dkt. 41. In their second amended complaint, Plaintiffs allege that RISA violated the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3604(c), *et seq.*, by engaging in illegal housing discrimination on the basis of familial status, and seek declaratory and injunctive relief. *Id*. at 12-16.

On June 4, 2010, the Court granted in part Plaintiffs' motion for partial summary judgment concluding that, based on the HUD Memo, RISA could not "claim the HOPA exemption because it continued to discriminate while attempting to comply with the verification requirements." Dkt. 42 at 12-13. On August 11, 2010, the Court granted Plaintiffs' motion to issue a preliminary injunction ordering RISA to, among other things, remove all age restrictions from its bylaws, remove all signage that stated its 55 and older restrictive covenants and inform residents and local real estate agents that the Court had ordered RISA to immediately cease enforcement of its age restrictions. Dkt. 75. On September 1, 2010, the Court granted RISA's motion for a discretionary appeal under 28 U.S.C. § 1292(b), concluding that the questions presented were controlling issues of law and that there were substantial grounds for differences of opinion. Dkt. 92. The Court stayed the action, with the exception of RISA's pending motion for partial summary judgment, and certified the action to the Ninth Circuit Court of Appeals. *Id*. On September 21, 2010, the Court granted RISA's motion for partial summary judgment concluding that RISA's bylaws are enforceable as covenants. Dkt. 100.

On April 27, 2011, the Ninth Circuit issued its opinion on RISA's appeal reversing the Court's interpretation of the HUD Memo, holding that:

>a residential community that has continuously operated as a retirement community for persons age 55 or older can qualify for the housing for older persons exemption from the Fair Housing Act's prohibition on familial status discrimination by establishing that it currently satisfies the exemption's three statutory and regulatory criteria at the time of the alleged violation, even if the community enforced age restrictions when it first achieved compliance with the exemption's age verification requirement.

*Balvage v. Ryderwood Improvement and Service Ass'n, Inc.*, 642 F.3d 765, 768-69 (9th Cir. 2011).  Further, the Ninth Circuit held that

>[t]he [district] court properly concluded that RISA did not qualify for the HOPA exemption between May 2000 and September 2007, when RISA completed its first HOPA verification survey, because during that time RISA did not verify by reliable surveys and affidavits—or through other adequate means—that at least 80 percent of its occupied units were occupied by at least one person who was 55 years of age or older.

*Id*. at 776 (citing 42 U.S.C. § 3607(b)(2)(C)(iii)).  Accordingly, the Ninth Circuit remanded the action to this Court to address the parties' dispute as to "whether RISA's September 2007 survey satisfies the statutory and regulatory criteria."  *Id*. at 780.

On April 12, 2012, Plaintiffs filed their second motion for partial summary judgment (Dkt. 128) and RISA filed a motion for summary judgment (Dkt. 133).  Both motions addressed the adequacy of the 2007 survey.  On July 20, 2012, the Court denied both motions because material questions of fact existed for trial.  Dkt. 146.

On September 20, 2012, Plaintiffs moved to amend their complaint requesting leave to add claims of retaliation.  Dkt. 151.  On October 26, 2012, the Court granted the motion.  Dkt. 164.  On April 18, 2013, RISA filed a motion for summary judgment on Plaintiffs' retaliation claims.  Dkt. 186.  On May 28, 2013, the Court granted in part and denied in part RISA's motion.  Dkt. 207.  After dismissing the majority of Plaintiffs'

alleged acts of retaliation, the Court allowed Plaintiffs to assert two limited categories of retaliation claims. *Id.* Specifically, the Court allowed (1) "failure to act" claims wherein RISA was on notice of specific retaliatory conduct and failed to act to remedy or prevent such conduct and (2) acts by RISA's board members if Plaintiffs can show that they were treated differently than other non-paying members. *Id.* at 10–12.

On May 29, 2013, RISA filed a motion for summary judgment on its claims for unpaid association dues. Dkt. 210. On July 9, 2013, the Court denied the motion because questions of fact existed regarding whether Plaintiffs received the services covered by the association's dues. Dkt. 232.

Defendant has filed four motions for summary judgment on the following issues: (1) Plaintiffs' remaining retaliation claims (Dkt. 241); (2) Plaintiffs' punitive damage claims (Dkt. 249); (3) RISA's claims for unpaid dues (Dkt. 251); and (4) the 2013 survey (Dkt. 257). Plaintiffs responded. Dkts. 246, 253, 260, & 264. RISA replied. Dkts. 246, 256, 262, & 267.

## II. DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     2013 Survey**

In 2013 RISA conducted a survey to determine whether at least 80% of all occupied residences in Ryderwood were occupied by at least one person over the age of 55. Based on this survey, RISA moves for summary judgment on the issue of whether the association is currently compliant with HOPA. Dkt. 257. Plaintiffs contest only "the reliability of the data on which [RISA] relies." Dkt. 264 at 1.

"In order for a housing facility or community to qualify as housing for persons 55 years of age or older, it must be able to produce, in response to a complaint filed under this title, verification of compliance . . . through reliable surveys and affidavits." 24 C.F.R. § 100.307(a). The regulations list six types of reliable documents for age verification (drivers license, passport, etc.) or an occupant may use a "certification in a lease, application, affidavit, or other document signed by any member of the household age 18 or older asserting that at least one person in the unit is 55 years of age or older." *Id*. § 100.307(d).

In this case, Plaintiffs advance six reasons RISA's survey is flawed. Dkt. 264 at 2. First, Plaintiffs contend that "necessary documentation is missing . . . ." *Id*. Plaintiffs point to one survey wherein the residents failed to include a copy of the document used to identify their birthdates. Dkt. 259-4 at 1 (Bichlers' survey). The failure of one resident to provide their actual identification does not create a question of fact as to the reliability of the entire survey. Moreover, Plaintiffs' extrapolation of one alleged mistake applied across the entire survey is pure speculation and contrary to the vast majority of submitted survey documents. Therefore, the Court declines to accept Plaintiffs' proposition that the

entire survey is flawed because the Bichlers failed to provide copies of their identifications.

Second, Plaintiffs contend that none of the survey forms were verified under penalty of perjury. Dkt. 264 at 2. There is no such requirement in the HOPA regulations for verification under penalty of perjury; the cited regulation requires a certification statement only in the absence of acceptable age verification documents. Therefore, Plaintiffs' argument on this issue is without merit.

Third, Plaintiffs contend that RISA included properties that are not part of Ryderwood. Dkt. 264 at 2. Plaintiffs' contention is pure speculation and is not evidence that creates a material question of fact for trial. In fact, Plaintiffs fails to identify a single property that should not have been included in the survey, much less a sufficient number of properties that would drop the survey results to less than 80%. Therefore, Plaintiffs have failed to meet their burden on this issue.

Fourth, Plaintiffs contend that RISA used unreliable information regarding Plaintiffs' information. Dkt. 264 at 2. According to Plaintiffs, RISA relied on information that Plaintiffs provided in discovery responses "that may or may not have still been accurate as of the time of the survey." Dkt. 265, ¶ 6. Again, this is pure speculation and is not based upon any evidence identified in the record that creates a material question of fact for trial.

Fifth, Plaintiffs contend that the persons who signed RISA's HOPA affidavit have no personal knowledge regarding the accuracy or reliability of the information set forth in the surveys. Dkt. 264 at 2. The signers, however, had personal knowledge of the surveys

1 themselves and Plaintiffs have failed to identify a reason to question the accuracy of the
2 information contained therein.  Therefore, even if the regulations required the board to
3 verify the accuracy of the surveys, Plaintiffs fail to identify evidence that creates a
4 question of fact for trial.

5     Sixth, Plaintiffs contend that RISA relied on unreliable information regarding
6 vacant properties.  Dkt. 264 at 2.  Again, Plaintiffs' argument is based purely on
7 speculation, and they have failed to provide evidence of any specific error in the survey,
8 let alone sufficient errors that would drop the survey results below the 80% requirement.
9 Moreover, vacant houses are unable to speak for themselves and the surveyors were
10 justified in relying on neighbors' statements and other indirect sources of information.
11 The regulation requires reliable evidence, not evidence that would be automatically
12 admissible in a court of law.

13     Finally, Plaintiffs request a 30-day extension to further evaluate the survey results.
14 Dkt. 264 at 2–3.  The Court finds that Plaintiffs have failed to show sufficient need to
15 justify an extension.  Therefore, the Court concludes that RISA is currently compliant
16 with HOPA and grants RISA's motion on this issue.

17 **C.    Retaliation Claims**

18     The FHA protects individuals from certain types of retaliatory conduct.
19 Specifically, the FHA provides that it is

20    unlawful to coerce, intimidate, threaten, or interfere with any person in the
      exercise or enjoyment of, or on account of his having exercised or enjoyed,
21    or on account of his having aided or encouraged any other person in the
      exercise or enjoyment of, any right granted or protected by [the Act].
22

42 U.S.C. § 3617.

To present a *prima facie* claim for retaliation, a plaintiff must show (1) protected activity, (2) adverse action by defendant against plaintiff, and (3) a causal link between the activity and the adverse action. *See, e.g., Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). If plaintiff meets its burden, then the burden shifts to defendant to show a legitimate non-retaliatory reason for the allegedly adverse action. *Id*. If the defendant meets its burden of production, the burden of persuasion shifts back to the plaintiff to show that the defendant's proffered reason is not worthy of credence or that the reason is mere pretext for a retaliatory action. *Id*.; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

In this case, the Court has previously dismissed the majority of Plaintiffs' asserted acts of retaliation. In their current response, Plaintiffs state that they intend to proceed to trial on three categories of retaliation claims as follows:

> (1) invalid and illegal liens defendant has placed on plaintiffs' properties, (2) lawsuits defendant has filed against certain plaintiffs, where defendant has not pursued legal action against similarly situated non-plaintiff residents, and (3) actions intended to menace and intimidate the plaintiffs at a September mediation in Winlock.

Dkt. 243 at 1. With regard to the actions at the mediation, Plaintiffs are attempting to hold RISA accountable for the actions of its members. "[W]e do not want, and we do not think Congress wanted, to convert every quarrel among neighbors in which a racial or religious slur is hurled into a federal case." *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004). The Court has already dismissed similar claims based on quarrels among neighbors, and, similarly, the Court

1  dismisses these claims because there is no evidence that RISA or its board members
2  initiated, encouraged, or failed to prevent, after sufficient notice, the alleged actions of its
3  members.  Therefore, the Court grants RISA's motion on these claims.
4       With regard to the liens, there is no evidence of retaliatory motive.  One must infer
5  the causal link that because RISA filed the liens, it must be retaliatory.  Even if this
6  inference supports a *prima facie* case of retaliation, RISA has submitted evidence of a
7  legitimate reason for filing the liens because Plaintiffs have failed to pay RISA the
8  requested association dues.  Once the burden shifts back to Plaintiffs, they have failed to
9  submit any evidence of pretext or show that RISA's justification is not worthy of
10 credence.  Therefore, the Court grants RISA's motion on these claims.
11      With regard to the lawsuits, Plaintiffs' claims are not properly supported by
12 evidence.  Plaintiffs only speculate that they are being treated differently than other
13 similarly situated non-paying members.  In fact, Charles Weaver declares that the liens
14 and lawsuits "happened both before and after the various resigned members became
15 plaintiffs in this litigation."  Dkt. 244, ¶ 5.  Moreover, filing a lawsuit to enforce a lien for
16 unpaid sums is a legitimate action.  The propriety of the lien and the repercussions for
17 filing invalid liens shall be addressed in those state court actions.  In this action, however,
18 there is no evidence that the lawsuits state a *prima facie* case of retaliation.  Therefore,
19 the Court grants RISA's motion on this issue and its motion in total.
20 **D.      Unpaid Dues**
21      The Court denied RISA's first motion for summary judgment on the issue of
22 unpaid dues because questions of fact remained for trial.  Dkt. 232.  Questions of fact still

remain and summary judgment is not appropriate. For example, there is still a question of fact whether RISA billed some Plaintiffs for services that Plaintiffs paid for independently, such as garbage services, which would arguably be in violation of the bylaws that approve billing for "services rendered." Therefore, the Court denies RISA's motion on the issue of unpaid dues.

**E.     Punitive Damages**

A plaintiff seeking punitive damages in a fair housing case must show that the defendant acted with "reckless or callous indifference" for the fair housing rights of others. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906-07 (9th Cir. 2002) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). In determining whether to impose punitive damages, the fact finder will consider "an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent" to future illegal conduct. *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir. 1977). Punitive damages may be awarded where the defendant ignored its duties under the law or otherwise engaged in "knowledgeable inaction." *See Miller v. Apartments and Homes of New Jersey, Inc.*, 646 F.2d 101, 111 (3d Cir. 1981); *Badami v. Flood*, 214 F.3d 994 (8th Cir. 2000); *see also Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991).

Here, RISA argues that "[p]unitive damages are not appropriate in this case." Dkt. 249 at 1. RISA asserts that the standard for punitive damages is a showing that defendant acted out of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice. *Id*. at 4–5. While the law is clear in other contexts such as employment discrimination, the law for punitive damages under the FHA is less clear. In fact, some

courts have allowed the jury to consider punitive damages simply because there was a violation of the FHA.  *See, e.g., Alexander v. Riga*, 208 F.3d 419, 424 (3rd Cir. 2000) ("the discrimination itself is the harm . . . [and] the question of punitive damages [should have been submitted] to the jury.").  Therefore, due to the uncertainty in this area of the law and the apparently low bar to send punitive damage claims to a jury, the Court denies RISA's motion on the issue of punitive damages.

## III. ORDER

Therefore, it is hereby **ORDERED** that RISA's motion for summary judgment on the 2013 Survey (Dkt. 257) and Plaintiffs' retaliation claims (Dkt. 241) are **GRANTED** and RISA's motion for summary judgment on Plaintiffs claims for punitive damages (Dkt. 249) and unpaid dues (Dkt. 251) are **DENIED**.

Dated this 4th day of March, 2014.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge